UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KIDVILLE FRANCHISE COMPANY, LLC

                        **Plaintiff,**

-against-                          Docket No._____

JPK KID SERVICES, LLC; JENNIFER KIM;
KIDROSE LLC; ADI ROSENFELD; JESSE
ROSENFELD; CRKIDS HOLDING, LLC; and
CHRISTINE RUPP,

                        **Defendants.**

## COMPLAINT

Plaintiff Kidville Franchise Company, LLC ("Kidville") for its complaint against JPK Kid Services, LLC ("JPK"); Jennifer Kim ("KIM"); Kidrose LLC ("KIDROSE"); Adi Rosenfeld ("ADI"); Jesse Rosenfeld ("JESSE"); CRKIDS Holding, LLC ("CRKIDS"); and Christine Rupp ("RUPP") (JPK, KIDROSE and CRKDS shall collectively be referred to as the "Franchisees") states as follows:

## THE PARTIES

1.    Plaintiff Kidville is a limited liability company organized under the laws of the State of New York, with its principal place of business at 163 East 84th Street, New York, New York 10028.

2.    Upon information and belief, Defendant JPK is a limited liability company organized under the laws of the State of New York with its principal place of business at 205 W. 88th Street, New York, New York 10024.

3.    Upon information and belief, Defendant Kim is an individual who resides and who maintains her principal place of business at 2 Rose Court, Dix Hills, New York 11746. Upon information and belief, Kim is the sole owner and Managing Member of JPK.

4.  Upon information and belief, Defendant KIDROSE is a limited liability company organized under the laws of the State of New York with its principal place of business at 555 W. 235th Street, Bronx, New York 10463.

5.  Upon information and belief, Defendant ADI is an individual who resides at 3333 Henry Hudson Parkway, Riverdale, New York 10463 and who maintains her principal place of business at 555 W. 235th Street, Bronx, New York 10463. Upon information and belief, ADI is the owner of 50% of the ownership interests and President of KIDROSE.

6.  Upon information and belief, Defendant JESSE is an individual who resides at 3333 Henry Hudson Parkway, Riverdale, New York 10463 and who maintains his principal place of business at 555 W. 235th Street, Bronx, New York 10463. Upon information and belief, JESSE is the owner of 50% of the ownership interests and Vice President of KIDROSE.

7.  Upon information and belief, Defendant CRKIDS is a limited liability company organized under the laws of the State of New York, with its principal place of business at 67 East 11th Street, Front 3, New York, New York 10003.

8.  Upon information and belief, Defendant RUPP is an individual who resides at 151 East 85th Street, New York, New York 10028 and who maintains her principal place of business at 67 East 11th Street, Front 3, New York, New York 10003. Upon information and belief, Rupp is the sole owner and Managing Member of CRKIDS.

## JURISDICTION

9.  This Court has original subject matter jurisdiction pursuant to 15 U.S.C. §1121(a) and 26 U.S.C. §1338(a) as to claims asserted under the Lanham Act, 15 U.S.C. §1051 *et seq*. This Court also has original jurisdiction over the claim of unfair competition alleged herein pursuant to 28 U.S.C. §1338(b).

10. Jurisdiction over the claims other than those based on the Lanham Act is proper under 28 U.S.C. §1367, because those claims are so related to the claims brought under the Lanham Act that they form a part of the same case or controversy.

11. Personal jurisdiction over all Defendants is proper under Article 3 of the New York Civil Practice Law and Rules because this action arises out of Defendants' unlawful conduct within the State of New York.

12. Venue is proper in this district under 28 U.S.C. §1391(b) because a substantial part of the events or omissions giving rise to the claims asserted occurred within this district.

## THE KIDVILLE SYSTEM AND MARKS

13. Kidville operates and licenses others to operate Facilities under the "Kidville" name.

14. KIDVILLE Facilities provide newborns through six-year-old children and their families a wide array of developmental classes like music, gym, art, and enrichment classes, including classes under the ROCKIN' RAILROAD™, MY BIG MESSY ART CLASS®, and BIG MUSCLES FOR LITTLE BABIES® brands (collectively, "Classes"), as well as indoor playgrounds, birthday and themed parties, and related services (referred to collectively, with Classes, as "Services"), and also feature retail boutiques selling various children and family-oriented products, many of which bear the Mark (collectively, "Products").

15. Through the expenditure of time, skill, effort and money, Kidville and its affiliates have developed and are the sole and the exclusive owners of a number of trademarks, service marks and trade names (the "Kidville Trademarks" or "Trademarks") which have been used in the development, organization and operation of the Kidville System.

16. Kidville has entered into Franchise Agreements for the operation of Kidville

Facilities on a nationwide basis, pursuant to which Kidville licenses others to sell Kidville Classes, Products and Services a single Kidville Facility using Kidville's Trademarks and Licensed Know-How.

17. Kidville's Licensed Know-How consists of the manner in which the Franchisee is licensed to operate the Licensed Business of offering for sale Kidville Classes, Products and Services, the method of doing business, and certain other trade secrets and proprietary information, as designated and adopted by Kidville.

18. Kidville has developed the Kidville Trademarks, for use in the operation of the Licensed Business, which include the following principal trademarks, which, among several others, have been registered by Kidville or its affiliates on the Principal Register of the United States Patent and Trademark Office:

| MARK | REGISTRATION NUMBER | DATE REGISTERED |
| --- | --- | --- |
| KIDVILLE, NY® | 2,973,530 | 7/19/05 |
| MY BIG, MESSY ART CLASS® | 3,213,153 | 2/27/07 |
| KIDVILLE® | 3,401,587 | 3/25/08 |
| RUN, WIGGLE, PAINT & GIGGLE® | 3,401,517 | 3/25/08 |
| BIG MUSCLES FOR LITTLE BABIES® | 3,401,526 | 3/25/08 |
| KIDVILLE, NY® | 3,341,846 | 11/20/07 |
| KVU® | 3,401,518 | 3/25/08 |

19. The foregoing registrations are valid, subsisting, in full force and effect and cover the goods and services identified in the registration certificates. The Kidville registrations are incontestable under the Lanham Act, 15 U.S.C. §1065.

20. The Kidville Trademarks have been used exclusively by Kidville, its predecessors and its designated licensees in connection with the operation of Kidville Facilities. There are currently 29 Kidville Facilities in 3 countries.

21. Since its first use, the name "Kidville" has become universally associated with Kidville and its predecessors' unique and particular Facilities. As a result, Kidville owns common law trade name rights and trademark rights in the name "Kidville" and other Kidville trademarks. By virtue of the long use and promotion and the resulting fine public reputation of the trade name "Kidville," there is a secondary meaning in the name "Kidville" and the Kidville Trademarks in that the public associates the Classes, Products and Services sold in connection with the Kidville Trademarks as originating from a single source.

22. The Kidville Trademarks have become valuable assets of substantial and inestimable worth to Kidville. The Kidville Trademarks are symbols of the Kidville Facilities and the Classes, Products and Services offered to the public therefrom.

23. Kidville has a vital economic interest in protecting its name and the Kidville Trademarks. The preservation and protection of its name and the Kidville Trademarks are essential to the maintenance of the quality of "Kidville Facilities" and the goodwill and reputation associated with them.

## THE PARTIES' KIDVILLE FRANCHISE AGREEMENTS AND RELATED AGREEMENTS

24. On April 17, 2013, Kidville entered into a franchise agreement, styled "Kidville Franchise Company LLC Franchise Agreement," with JPK Enterprises LLC ("JPK Franchise Agreement"), pursuant to which Kidville granted JPK Enterprises LLC a franchise to operate a KIDVILLE Facility within a Territory, and to use the Franchise System in its operation, for a ten-year term.

25. On April 17, 2013, defendant KIM executed and delivered to Kidville a Guaranty and Assumption of Obligations, pursuant to which KIM agreed to be personally bound by, and personally liable for breach of, each and every provision or the JPK Franchise Agreement; provided, however, KIM's monetary obligations and liabilities thereunder are limited to $50,000.

26. On April 17, 2013, defendant KIM executed a Non-Monetary Guaranty and Assumption of Obligations, pursuant to which Kim agreed to render any performance required under the JPK Franchise Agreement upon demand if JPK failed or refused to do so.

27. On November 13, 2013, JPK Enterprises LLC assigned all of its rights and obligations under the JPK Franchise Agreement to JPK, and Kidville consented to that assignment. On that same date, Kidville and JPK amended the JPK Franchise Agreement by changing the definition of the Territory defined in Exhibit B from Tribeca to Upper West Side.

28. On October 9, 2012, Kidville entered into a franchise agreement, styled "Kidville Franchise Company LLC Franchise Agreement," with KIDROSE ("KIDROSE Franchise Agreement"), pursuant to which Kidville granted KIDROSE a franchise to operate a KIDVILLE Facility within a Territory, and to use the Franchise System in its operation, for a ten-year term.

29. On October 9, 2012, defendants JESSE and ADI executed and delivered to Kidville a Guaranty and Assumption of Obligations, pursuant to which JESSE and ADI each agreed to be personally bound by, and personally liable for breach of, each and every provision or the KIDROSE Franchise Agreement.

30. On October 9, 2012, defendants JESSE and ADI executed a Non-Monetary Guaranty and Assumption of Obligations, pursuant to which JESSE and ADI agreed to render any performance required under the KIDROSE Franchise Agreement upon demand if KIDROSE failed or refused to do so.

Doc Num 256409-V1

31. On March 19, 2010, Kidville entered into a franchise agreement, styled "Kidville Franchise Company LLC Franchise Agreement," with CRKIDS ("CRKIDS Franchise Agreement"), pursuant to which Kidville granted CRKIDS a franchise to operate a KIDVILLE Facility within a Territory, and to use the Franchise System in its operation, for a ten-year term.

32. On March 19, 2010, Kidville and Rupp executed a Principal's Agreement, pursuant to which Rupp agreed that she will be personally bound by certain sections of the CRKIDS Franchise Agreement, including the post-termination provisions of Section 15.

### THE FRANCHISEES' AND GUARANTOR'S CONTRACTUAL OBLIGATIONS UNDER THE FRANCHISE AGREEMENTS

33. Under Section 1.D of the Franchise Agreements, Kidville granted to each Franchisee a franchise to operate a Kidville Facility within a Territory, and to use the Franchise System in its operation, for an initial term of ten (10) years.

34. Pursuant to Section 10 of the Franchise Agreements, each Franchisee was obligated to send Kidville monthly statements of gross revenues.

35. Pursuant to Section 3.B of the Franchise Agreements, each Franchisee was obligated to pay to Kidville a Royalty Fee, calculated as a percentage of Gross Sales, on a monthly basis in consideration for the franchise granted by Kidville.

36. Pursuant to Section 9.B of the Franchise Agreement, each Franchisee was obligated to contribute to the Kidville Brand Fund, calculated as a percentage of Gross Sales, on a monthly basis.

37. Pursuant to Section 14.B.14, Kidville may terminate the Franchise Agreements, effective upon delivery of written notice of termination, if Franchisee fails to pay Kidville any amounts due thereunder or otherwise and does not correct the failure within ten (10) days after delivery of a written notice of that failure to Franchisee.

Doc Num 256409-V1

38.  Pursuant to Section 15 of the Franchise Agreements, upon termination of the Franchise Agreement for any reason, all of the Franchisee's rights and privileges cease immediately and Franchisee must immediately cease operating or using, or permitting to be used or operated, anywhere in any manner, directly or indirectly: (a) Kidville's Trademarks and System; (b) all advertising and promotional materials and programs, signs, supplies, uniforms or other items bearing the Trademarks; and (c) the Licensed Know-How and Confidential Information.

39.  Pursuant to Section 15.A of the Franchise Agreements, upon termination of the Franchise Agreement for any reason, each Franchisee is required to pay all amounts due and owing to Kidville within fifteen (15) days after termination.

40.  Pursuant to Section 15.D of the Franchise Agreements, for a period of two years after termination of the Franchise Agreements for any reason, the Franchisees and their owners may not, directly or indirectly, own, maintain, engage in, manage or have any control in interest in any Competitive Business (defined in Section 7 of the Franchise Agreements) located or operating: (i) at the formerly franchised Facility; (ii) within the Territory; (iii) within the territories of any other franchised Kidville Facility, under construction or in operation on either the Effective Date or Termination Date; or (iv) within five (5) miles of any Kidville Facility.

41.  Under the Principal's Agreement, RUPP agreed, as an individual, to comply with the post-termination obligations set forth in Sections 15.B, C and D of the CRKIDS Franchise Agreement.

42.  Under the Guaranties, KIM, ADI and JESSE agreed, as individuals, to guarantee the full performance, payment and discharge of all of their respective Franchisees' indebtedness and obligations to Kidville arising out of, among other obligations, the Franchise Agreements,

Doc Num 256409-V1

and to comply with the post-termination obligations set forth in Section 15.B, C and D of the Franchise Agreements.

### KIDVILLE'S DECLARATIONS OF DEFAULT AND TERMINATION

43. On or about September 8, 2014, JPK began to operate a KIDVILLE Facility located at 205 W. 88th Street, New York, New York 10024 (the "JPK Facility").

44. On or about June 1, 2013, KIDROSE began to operate a KIDVILLE Facility located at 555 W. 235th Street, Bronx, New York (the "KIDROSE Facility").

45. On or about February 7, 2011, CRKIDS began to operate a KIDVILLE Facility located at 67 E. 11th Street, Front 3, New York, New York (the "CRKIDS Facility").

46. By letter dated December 27, 2017 ("KIDROSE Notice of Default"), Kidville notified KIDROSE and Defendants ADI and JESSE that KIDROSE had defaulted under the KIDROSE Franchise Agreement by virtue of its failure to pay royalties and brand fund contributions.

47. By letter dated December 27, 2017 ("JPK Notice of Default"), Kidville notified JPK and Defendant KIM that JPK had defaulted under the JPK Franchise Agreement by virtue of its failure to pay royalties and brand fund contributions.

48. By letter dated December 27, 2017 ("CRKIDS Notice of Default"), Kidville notified CRKIDS and Defendant RUPP that CRKIDS had defaulted under the CRKIDS Franchise Agreement by virtue of its failure to pay royalties and brand fund contributions.

49. Despite the receipt of the Notices of Default, the Franchisees failed to cure the defaults as set forth therein.

50. By letter dated February 16, 2018 ("KIDROSE Notice of Termination"), Kidville notified KIDROSE, ADI and JESSE that the KIDROSE Franchise Agreement was terminated,

effective immediately.

51. By letter dated February 16, 2018 ("JPK Notice of Termination"), Kidville notified JPK and KIM that the JPK Franchise Agreement was terminated, effective immediately.

52. By letter dated February 16, 2018 ("CRKIDS Notice of Termination"), Kidville notified CRKIDS and RUPP that the CRKIDS Franchise Agreement was terminated, effective immediately.

### THE DEFENDANTS' POST-TERMINATION DEFAULTS

53. In the Notices of Termination, Kidville demanded that the Franchisees and individual Guarantors immediately comply with the post-termination obligations at each of the formerly franchised Facilities.

54. Despite Kidville's termination of the Franchise Agreements on February 16, 2018 and Kidville's demand for performance of the post-termination obligations, the Franchisees have failed, among other obligations, to pay all outstanding royalties, advertising contributions, and other amounts due to Kidville and its affiliates; to cease doing business as a Kidville Facility; to discontinue their use of the Kidville Trademarks, Licensed Know-How and Confidential Information; to de-image the Facilities; to comply with the post-termination covenant against competition and, to return Kidville's Confidential Information, Manuals, forms and materials, including trade secret information.

### COUNT I

### (Breach of Contract – Damages – Franchise Agreements)

55. As of December 27, 2017, JPK failed to pay its required royalties, advertising contribution and interest/late fees under the Franchise Agreements in the aggregate amount of $26,354.67.

56. As of December 27, 2017, KIDROSE failed to pay its required royalties, advertising contribution and interest/late fees under the Franchise Agreements in the aggregate amount of $56,624.15.

57. As of December 27, 2017, CRKIDS failed to pay its required royalties, advertising contribution and interest/late fees under the Franchise Agreements in the aggregate amount of $33,309.06.

58. Consequently, the Franchisees have defaulted in the performance of their obligations under the Franchise Agreements.

59. Kidville and its affiliates have performed all of their obligations under the Franchise Agreements.

60. Kidville is entitled to judgment on all amounts owed to it by the Franchisees under the Franchise Agreements.

61. Pursuant to Section 3.D of the Franchise Agreements, Kidville is entitled to a late payment fee at the rate of 10% of the overdue payment plus interest on all amounts owed that are more than seven days past due, at a rate of 1½% per month.

62. Pursuant to Section 17.C of the Franchise Agreements, in addition to the judgment entered in its favor, Kidville is entitled to recover reasonable attorneys' fees, court costs and all of its expenses in connection with this action.

## COUNT II

### (Trademark Infringement)

63. Kidville and/or its affiliates is the owner of various trademarks and service marks (collectively the "Trademarks"), which are registered in the United States Patent and Trademark Office pursuant to the Lanham Act (15 U.S.C. §1051 and 1053). Several are incontestable under

Doc Num 256409-V1

Section 15 of the Lanham Act (15 U.S.C. §1065).

64. Kidville has given notice to the public of its registration of the Trademarks as provided in the Lanham Act (15 U.S.C. §1111).

65. Kidville and its affiliates have developed the Trademarks at great expense so that today they are valuable and irreplaceable assets. The Trademarks have become favorably known in the minds of the purchasing public generally throughout the United States and various foreign countries as indicating the source, origin, and quality of Kidville's products and services.

66. Kidville polices the use of its Trademarks and service marks and demands high quality and compliance with its standards to protect the value of those marks.

67. The Franchisees, solely by reason of the license granted to them by Kidville pursuant to the Franchise Agreements, had authority to use certain Trademarks in accordance with the terms and conditions of the Franchise Agreements.

68. Upon termination of the Franchise Agreements, the Franchisees' authority to use the Trademarks was revoked, and Section 15 of the Franchise Agreements required the Franchisees to thereupon immediately discontinue use of all Trademarks, service marks, trade names, trade secrets, and Licensed Know-How owned or developed by Kidville or its affiliates.

69. Despite the termination of the Franchise Agreements, and despite due demand by Kidville, the Franchisees have failed to immediately and fully cease and discontinue their use and display of the Trademarks. Rather, the Defendants continue to operate their Locations as Kidville Facilities by using, without license or other right, the Trademarks and by failing to completely de-image the Locations as required by the Franchise Agreements.

70. The Defendants continued use in interstate commerce of the Trademarks and complete failure to comply with the de-imaging requirements of the Franchise Agreements is an

Doc Num 256409-V1

infringement of Kidville's rights in those marks in violation of 15 U.S.C. §1114(1) and infringes upon Kidville's goodwill, reputation, trademarks and service marks; creates a likelihood of injury to Kidville's business reputation; causes substantial likelihood of confusion as to the relationship, if any, between Kidville and the Defendants; creates the appearance that the Defendants are still duly licensed franchisees of Kidville; and otherwise competes unfairly with Kidville.

71. Kidville is entitled to judgment for monetary relief, pursuant to 15 U.S.C. §1117, including actual damages, costs and reasonable attorneys' fees against the Defendants for the Defendants' acts of infringement of the Trademarks for the time subsequent to the termination of the Franchise Agreements through the time the Defendants completely de-image the Locations as required by the Franchise Agreements.

## COUNT III

### (Federal Unfair Competition)

72. The Defendants, after the termination of the Franchisees' authority to operate their Kidville Facilities and to use the Trademarks under the Franchise Agreements, and with the intent and purpose of misleading the trade and the public, continue to operate their Locations using and displaying the Trademarks by failing to de-image the Locations as required by the Franchise Agreements.

73. The Defendants' unlicensed use of the Trademarks comprises a false designation of origin or false representation, and constitutes the utilization of false descriptions and representations in interstate commerce. The Defendants are falsely representing themselves to the public as Kidville franchisees.

74. The Defendants' acts are in violation of 15 U.S.C. §1125(a).

Doc Num 256409-V1

75.     Kidville is entitled to judgment for damages against the Defendants for the Defendants' acts of unfair competition arising from their use of the Trademarks from the termination of the Franchise Agreements to the time the Defendants de-image the Locations as required by the Franchise Agreements.

## COUNT IV

### (Accounting and Unjust Enrichment)

76.     Pursuant to Section 10 of the Franchise Agreements, each Franchisee was obligated to submit monthly reports of gross revenues from their Locations and pay royalties and advertising contributions calculated as percentages of those revenues to Kidville on a monthly basis in consideration for the franchise granted by Kidville under the Franchise Agreements.

77.     The Defendants have operated and continue to operate their Locations after the termination of the Franchise Agreements using Kidville's trademarks, service marks, systems of operation and Licensed Know-How, without submitting monthly reports of their Locations' gross revenues or paying any royalties to Kidville.

78.     Defendants have been unjustly enriched by their unauthorized use of and benefit from, without due payment therefore, the Trademarks, service marks, Licensed Know-How, trade dress and trade secrets at the Locations.

79.     Kidville is entitled to an accounting of all business conducted by any of the Defendants since February 16, 2018 in connection with the unauthorized use of the Trademarks, trade dress and trade secrets at the Locations.

## COUNT V

### (Declaratory Judgment)

80.     Pursuant to Section 14 of the Franchise Agreements and the terms of the Notices

Doc Num 256409-V1

of Termination, Kidville terminated the Franchise Agreements effective February 16, 2018.

81. Despite the termination of the Franchise Agreements and in violation of the post-termination obligations, the Defendants continue to operate their Locations as Kidville Facilities, and to use and display, without license, Kidville's Trademarks and service marks. The Defendants continue to hold themselves out as Kidville franchisees.

82. This action involves an actual controversy between the parties, within the scope and meaning of 28 U.S.C. §2201-2202.

83. Pursuant to the federal Declaratory Judgment Act (28 U.S.C. §2201, *et seq.*), Kidville is entitled to a declaratory judgment by this Court that the Franchise Agreements terminated effective February 16, 2018 in accordance with the Notices of Termination and Section 14 of the Franchise Agreements.

84. Kidville is also entitled to a declaratory judgment by this Court, pursuant to 28 U.S.C. §2201, that Defendants are not authorized (a) to use Kidville's Trademarks and service marks; (b) to operate their Locations as Kidville Facilities; (c) to hold themselves out as Kidville franchisees, or (d) for two years, to own or operate a Competitive Business at the Facility, within its Territory or the territories of other franchised Kidville Facilities, or within five (5) miles of any Kidville Facility.

## **COUNT VI**

### **(Breach of Contract – Franchise Agreements)**
### **(Injunctive Relief)**

85. The Franchise Agreements were terminated pursuant to their terms on February 16, 2018.

86. Without license or permission from Kidville and despite the termination of the Franchise Agreements and in violation of the post-termination obligations, the Defendants have

continued to operate their Locations as Kidville Facilities, and to use and display, without license, Kidville's Trademarks and service marks.

87. The Defendants continue to hold themselves out as Kidville franchisees, using Kidville's Trademarks and service marks without a license or right to do so.

88. Kidville has performed all of its obligations under the Franchise Agreements.

89. Kidville has no adequate remedy at law from the franchisees' breaches of the Franchise Agreements by their continued operation of their Locations as Kidville Facilities and Defendants' continued unauthorized display and use of Kidville's Trademarks, service marks, Licensed Know-How, and Confidential Information.

90. Therefore, Kidville is entitled to injunctive relief commanding specific performance of the Franchisees' post-termination obligations as set forth in the Franchise Agreements.

## COUNT VII

### (Breach of Contract – Principal's Agreement and Guaranties)
### (Injunctive Relief)

91. The Franchise Agreements were terminated pursuant to their terms on February 16, 2018.

92. Without license or permission from Kidville and despite the termination of the Franchise Agreements and in violation of the post-termination obligations, the Defendants have continued to operate their Locations as Kidville Facilities, and to use and display, without license, Kidville's trademarks and service marks.

93. The Defendants continued to hold themselves out as Kidville franchisees, using Kidville's trademarks and service marks without a license or right to do so.

94. Kidville has performed all of its obligations under the Franchise Agreements.

Doc Num 256409-V1

95. Defendants ADI, JESSE and KIM each signed the Guaranty and the Non-Monetary Guaranty, under which they each agreed, as individuals, to comply with the post-termination obligations set forth in Section 15 of the Franchise Agreements.

96. Defendant RUPP signed the Principal's Agreement, under which she agreed, as an individual, to comply with the post-termination designation set forth in Section 15 of the CRKIDS Franchise Agreement.

97. Kidville has no adequate remedy at law for the Defendants' breaches of the Franchise Agreements by their continued operation of their Locations as Kidville Facilities and Defendants' continued unauthorized display and use of Kidville's Trademarks, service marks, Licensed Know-How, and Confidential Information.

98. Therefore, Kidville is entitled to injunctive relief commanding specific performance of the post-termination obligations as set forth in the Franchise Agreements, as applicable to the individual Defendants pursuant to the Guaranties and Principal's Agreement.

## COUNT VIII

### (Breach of Contract – Damages – Guaranties)

99. Defendants ADI and JESSE each signed a Guaranty, under which they agreed, as individuals, to guarantee the full performance, payment and discharge of all of KIDROSE's indebtedness and obligations to Kidville or others arising out of, among other obligations, the KIDROSE Franchise Agreement.

100. Because KIDROSE has defaulted in the payment of its indebtedness and obligations to Kidville arising out of, among other obligations, the KIDROSE Franchise Agreement, ADI and JESSE are jointly and severally liable for the full performance, payment and discharge of such indebtedness and obligations, including, among other obligations, the

royalties and brand fund contributions due Kidville under the Franchise Agreement in the amount of approximately $56,624.15 (as of December 27, 2017); late fees and interest charges for the past due and unpaid royalties; and, Kidville's reasonable attorneys' fees, court costs and all of Kidville's expenses in connection with this action.

101. Kidville is entitled to judgment against ADI and JESSE for all amounts owed to it by KIDROSE under the KIDROSE Franchise Agreement.

102. Defendant KIM signed a Guaranty, under which she agreed, as an individual, to guarantee the full performance, payment and discharge of all of JPK's indebtedness and obligations to Kidville or others arising out of, among other obligations, the JPK Franchise Agreements.

103. Because JPK has defaulted in the payment of its indebtedness and obligations to Kidville arising out of, among other obligations, the JPK Franchise Agreement, KIM is liable for the full performance, payment and discharge of such indebtedness and obligations, including, among other obligations, the royalties and brand fund contributions due Kidville under the Franchise Agreement in the amount of approximately $26,354.67 (as of December 27, 2017); late fees and interest charges for the past due and unpaid royalties; and, Kidville's reasonable attorneys' fees, court costs and all of Kidville's expenses in connection with this action.

104. Kidville is entitled to judgment against KIM for all amounts owed to it by JPK under the JPK Franchise Agreement.

105. Kidville has performed all of its obligations under the Guaranties.

WHEREFORE, Kidville demands judgment against the Defendants, as follows:

1. Judgment in favor of Kidville on its claims for payment due and owing under the JPK Franchise Agreement against JPK in the approximate amount of $26,354.67 plus late fees

and interest;

2. Judgment in favor of Kidville on its claims for payment due and owing under the KIDROSE Franchise Agreement against KIDROSE in the approximate amount of $56,624.15 plus late fees and interest;

3. Judgment in favor of Kidville on its claims for payment due and owing under the CRKIDS Franchise Agreement against CRKIDS in the amount of $33,309.06 plus late fees and interest;

4. Judgment in favor of Kidville on its claims for payment due and owing under the KIDROSE Franchise Agreement and against ADI and JESSE, jointly and severally, in the amount of $56,624.15 plus late fees and interest;

5. Judgment in favor of Kidville on its claims for payment due and owing under the JPK Franchise Agreement and Guaranty against KIM, in the amount of $26,354.67 plus late fees and interest;

6. Judgment in favor of Kidville for damages resulting from Defendants' acts of unfair competition and trademark infringement, including treble damages for infringement, costs and reasonable attorneys' fees pursuant to 15 U.S.C. §1117;

7. An accounting of all business conducted by any of the Defendants since February 16, 2018, including, without limitation, an accounting of the gross sales at their Locations;

8. Entry of an order of injunctive relief by this Court commanding specific performance of the post-termination obligations as required by Section 15 of the Franchise Agreements;

9. Entry of a declaratory judgment by this Court, pursuant to 28 U.S.C. §2201, that Defendants are unauthorized (a) to use Kidville's Trademarks and service marks; (b) to operate

their Locations as Kidville Facilities; (c) to hold themselves out as Kidville franchisees; or (d) for two years, to own or operate a Competitive Business at the Facility, within its Territory or the territories of other franchised Kidville Facilities, or within five (5) miles of any Kidville Facility; and

10. Award Kidville its costs, attorneys' fees and such other and further relief, including pre- and post-judgment interest, to which it may be entitled.

Dated: New York, NY
February 20, 2018

Respectfully submitted,

KAUFMANN GILDIN & ROBBINS LLP

By: _____
David J. Kaufmann
Kevin M. Shelley
767 Third Avenue, 30th Floor
New York, New York 10017
212.755.3100

*Counsel for Plaintiff*
*Kidville Franchise Company, Inc.*